IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JAMES LEE SHORT, JR.                                                                                    PLAINTIFF
ADC #151894

v.                                            4:22-cv-01259-LPR-JJV

KEDRICK AVERY, Lieutenant,
Cummins Unit, ADC, *et al.*                                                                        DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.      DISCUSSION**

James Lee Short, Jr. ("Plaintiff") is a prisoner in the Arkansas Division of Correction ("ADC"). He has filed a *pro se* Complaint, pursuant to 42 U.S.C. § 1983, alleging that on October 28, 2022, Defendant Lieutenant Kedrick Avery used excessive force against him. (Doc. 2.) I have previously issued a Partial Recommended Disposition suggesting all other claims and Defendants be dismissed without prejudice for failing to state a claim upon which relief may be granted. (Doc. 5.) And that Recommendation remains pending.

Defendant Avery has filed a Motion for Summary Judgment arguing the remaining claim against him should be dismissed without prejudice because Plaintiff failed to properly exhaust his available administrative remedies. (Docs. 16-18.) Plaintiff has not filed a Response, and the time to do so has expired. After careful consideration and for the following reasons, I recommend the Motion be GRANTED, Plaintiff's excessive force claim against Defendant Avery be DISMISSED without prejudice, and this case be CLOSED.

## II.   SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

**III.   ANALYSIS**

   **A.   The Exhaustion Requirement**

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court.  *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000).  Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility.  *Id.*

   **B.   ADC's Grievance Policy**

The ADC policy in effect at the time of the alleged constitutional violation was Administrative Directive 19-34, which establishes a three-step procedure.  (Docs. 16-1, 16-2.) First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident.  The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place,

3

personnel involved or witnesses and how the policy or incident affected the inmate submitting the form." (*Id*. § IV(E)(2).) Inmates are cautioned a "[g]rievance must specifically name each individual involved in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance process may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." (*Id*. § IV(C)(4).) And the grievance form itself reminds prisoners to include the "name of personnel involved." (*Id*. at 20.) The problem solver must respond to the informal resolution within three working days. (*Id*. § IV(C)(4) and (7).)

Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance with the Warden on the same Unit Level Grievance Form within three working days. (*Id*. § IV(E)(11) and (F)(5)(7).) And the Warden must provide a written response within twenty working days. (*Id*. § IV(F)(7).)

Third, an inmate who is dissatisfied with the Warden's response or does not timely receive one, must appeal within five working days to the ADC Assistant Director. (*Id*. § IV(F)(8) and (G)(6).) The ADC Assistant Director must provide a written response within thirty working days. A decision or rejection of an appeal at this level is the end of the grievance process. (*Id*.) Finally, the Directive includes the following warning:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit or Claims Commission claim. If this is not done, the lawsuit or claim may be summarily dismissed.

(*Id*. at § IV(N).)

### C. Plaintiff's Grievances

The ADC Grievance Supervisor says, in her sworn Declaration, that Plaintiff has filed seven grievances since arriving at the ADC, but none of them deal with the October 28, 2022 use

4

of force challenged in this lawsuit. (Doc. 16-2, 16-3 to 16-8.) In fact, according to the Grievance Supervisor, Plaintiff's last grievance was filed on January 27, 2022, which was nine months before the incident. (*Id*.) My review of the provided grievances confirms this to be correct, and Plaintiff has not offered any contrary evidence. Accordingly, I conclude Plaintiff did not exhaust his administrative remedies. *See Muhammad v. Mayfield*, 933 F.3d 993, 1003 (8th Cir. 2019) (finding improper exhaustion when a prisoner's grievance did not raise the same claim made in his complaint in federal court); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (finding improper exhaustion when the incarcerating facility was not asked to evaluate "the distinct § 1983 claims first asserted" in the lawsuit); *Kozohorsky v. Harmon*, 332 F.3d 1141, 1143 (8th Cir. 2003) ("the plain language of § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims") (emphasis in the original).

However, that is not the end of the analysis because the PLRA only requires prisoners to exhaust their "available" administrative remedies. 42 U.S.C. § 1997e(a). Administrative remedies are "available" if they are "capable of use for the accomplishment of a purpose." *Ross v. Blake,* 578 U.S. 632, 642 (2016). In contrast, administrative remedies are "unavailable" if: (1) the administrative process "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) the administrative process is "so opaque that it becomes, practically speaking, incapable of use," or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 642-44; *see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

Plaintiff has not made any assertions regarding the first two types of unavailability. As to the third type, Plaintiff says in his Complaint he "wrote grievances on this and have been refused to have this signed by multiple Sgts." (Doc. 2 at 3.) Plaintiff also claims he is "writing grievances

on the two Sgts. for refusing to sign my grievance." (*Id.*) However, Plaintiff has not produced <u>any</u> evidence to support these vague assertions.

For instance, Plaintiff has not produced the grievance he allegedly wrote about the October 28, 2022 use of force that the sergeants refused to sign. Because he did not do so, there is no way to verify Plaintiff completed a grievance that properly described the October 28, 2022 incident, included Defendant Avery's name, and was signed by Plaintiff within fifteen days of the incident as required by the ADC's exhaustion policy. In other words, even if I presume two sergeants refused to sign a grievance for Plaintiff, there is no evidence it was properly completed in accordance with the ADC's rules. *See Townsend,* 893 F.3d at 783-84 (holding that even if a problem solver thwarted an inmate from proceeding to the next step of the ADC's grievance procedure, such interference made the exhaustion process unavailable only as to the defendant who was properly named in the grievance, and not to the two defendants who were omitted in violation of the ADC's exhaustion policy). Similarly, Plaintiff has not produced the grievances he allegedly filed about the sergeants who refused to sign his initial grievance about the October 28, 2022 use of force. Hence, Plaintiff's evidence here is lacking.

More importantly, Admin. Dir. 19-34 § III(J) and IV(E)(3) say "any staff member of the rank of sergeant or above" can sign and respond to the step one grievance/informal resolution. (Doc. 16-1 at 3, 6-7.) Plaintiff has not explained why he did not ask another sergeant to sign his step one grievance after the two allegedly uncooperative sergeants refused to do so. For these reasons, I conclude Defendant Avery is entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process. The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendant's Motion for Summary Judgment (Doc. 16) be GRANTED, Plaintiff's excessive force claim against Defendant Avery be DISMISSED without prejudice, and this case be CLOSED.

2. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

DATED this 22nd day of June 2023.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE